UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CLAUSS CONSTRUCTION | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 13 CV 5479 |
| | ) | |
| UCHICAGO ARGONNE LLC, and | ) | |
| ARGONNE NATIONAL LABORATORY | ) | |
| | ) | |
| Defendants. | ) | |

**UC ARGONNE LLC'S MOTION FOR A PROTECTIVE ORDER
CONCERNING CLAUSS' OVERBROAD, VAGUE AND
<u>IRRELEVANT RULE 30(b)(6) DEPOSITION TOPICS</u>**

Craig G. Penrose
LAURIE & BRENNAN, LLP
2 North Riverside Plaza, Suite 1750
Chicago, Illinois 60606
(312) 234-0305
cpenrose@lauriebrennan.com

49397_1

I.    **INTRODUCTION**

UChicago Argonne, LLC ("Argonne") must return to this Court to seek a Protective Order under Rule 26(c) concerning Clauss' Rule 30(b)(6) deposition topics because Clauss' topics are overbroad, vague and in many respects have no bearing on issues in this litigation. This Court should grant this motion and require Clauss Construction ("Clauss") to comply with Rule 30(b)(6) and issue a new notice that defines the topics with "painstaking specificity" and concern relevant topics.

II.    **CLAUSS' LAWSUIT**

Clauss filed a four-count complaint against Argonne seeking $5.4 million in alleged damages arising out of a fixed price contract signed October 21, 2009 ("the Contract"). The Contract required Clauss to decontaminate and demolish a nuclear test reactor facility located at the Argonne National Laboratory in Lemont, Illinois. After decontamination and demolition was complete, Clauss was required to appropriately and safely dispose of the resulting building rubble and debris as radioactive waste, along with up to 2,000 cubic feet of potentially contaminated soil—if found.

The parties chose a fixed-price arrangement for the contract, which, by operation of law, assigned the "risk to the contractor that the actual cost of the performance will be higher than the price of the contract." *Dalton v. Cessna Aircraft Co.*, 98 F.3d 1298, 1305 (Fed. Cir. 1996). Clauss was paid 100% of the Contract price, but claims it incurred $5.4 million in additional costs due to various alleged acts committed by Argonne.

III.    **PROCEDURAL HISTORY OF THE 30(b)(6) NOTICE ISSUE**

On September 25, 2014, Clauss sent an unsigned, 30(b)(6) "draft" notice of deposition without a date certain. Clauss' correspondence attaching the draft states as follows:

1

49397-1

Attached please find a draft Notice of Deposition so that you can determine who is best to field the questions and the dates that that person might be available. I would prefer to set it for October 9th or October 10 at your offices. Please let me know if one of these days works with you and I'll notice it up.

(Exhibit 1)

On September 29, 2014 the parties agreed to extend the deposition dates for 30(b)(6) witnesses for both parties (Exhibit 2). On October 6, 2014, the parties agreed to 30(b)(6) depositions on October 28, and 29, 2014 (Exhibit 3). On October 10, 2014, Argonne sent a Rule 37 letter to Clauss notifying Clauss that its topics were either too broad or vague or beyond the bounds of Rule 26 discovery (Exhibit 4). On October 17, 2014, pursuant to Rule 37 and Local Rule 37.2, the parties had a face-to-face meeting concerning Clauss' topics after a Court hearing and a deposition. The parties are unable to reach a resolution as to the substance of the topics (Exhibit 5, Affidavit/certification of Craig G. Penrose).

### IV. CLAUSS' CONTRACT REQUIRED REMOVAL OF ALL BUILDING RUBBLE AND DEBRIS AND UP TO 2,000 CUBIC FEET OF CONTAMINATION SOIL—IF FOUND

Because many of Clauss' topics are far beyond the reach of discovery under the confines of Rule 26, a quick review of the issues in this case is required. Clauss was required to remove all of the contaminated building and the associated building demolition rubble and debris. Clauss could not recycle or reuse the building as backfill. Clauss was also required to remove up to 2,000 cubic feet of contaminated soil—if any actual contaminated soil was found.

Section 01001 of the Project Specifications describes the "Work" as follows:

**DESCRIPTION OF WORK**

The decontamination of Building 330 as it relates to this project is defined as the removal of all remaining hazardous waste from the facility. **This work is to be followed by demolition of the building structure and building foundations; the removal, packaging of debris, and disposal of all generated waste**. The work also includes the excavation and removal of utilities to termination points at

the two nearest streets, and development and completion of Final Release Surveys of the work site. [emphasis added]

(Exhibit 6, Project Specifications, pg 1001:1)

The Project Specification entitled **Building Demolition (WBS 13330DD1.04.32)** states as follows:

Demolition activities include activities necessary to load all building debris waste.

**Argonne-designated demolition debris is all metal, concrete, brick** and other construction materials from all areas of the Building 330 site. **These materials cannot be recovered for recycling, and require documented certification of disposal from the designated disposal facility.**

(Exhibit 6, pg. 1001:4)(emphasis added). Thus, all the building had to be removed.

The Project Implementation Plan, Section 5.5, described the relevant Project Assumptions as:

- The volume of soil underneath the building that is radioactively contaminated with radionuclides other than tritium does not exceed 2,000 cubic feet.

(Exhibit 7, Implementation Plan, pg. 9-10). Clauss understood this provision to mean that if contaminated soil was found and needed to be removed, Clauss would have to remove the first 2,000 cubic feet as basic work under the Contract (Exhibit 8, pg. 1). If more than 2,000 cubic feet of contaminated soil was located and needed to be removed, a change order could be entered into.

## V. CLAUSS JUDICIALLY ADMITTED THAT IT HAS NO EVIDENCE THAT IT REMOVED MORE THAN 2,000 CUBIC FEET OF CONTAMINATED SOIL

One of the main underlying contentions by Clauss in this lawsuit is that somehow the 2,000 cubic foot assumption of contaminated soil contained in the Contract as referenced above caused extra costs for Clauss. In light of the significance of this issue under Clauss' theory, Argonne issued Interrogatory 18 seeking the specific amount of contaminated soil Clauss

3

49397-1

actually removed. Clauss answered by attempting to invoke Rule 33(d). Argonne objected to the use of Rule 33(d) and filed a motion to compel (Docket #32). Magistrate Gilbert denied the motion without prejudice, allowing Clauss the opportunity to provide documents (Docket #38). Clauss never provided such documents and the revised Interrogatory 18 Answer stated there were no documents (Exhibit 9, Clauss' Answer to Interrogatory No. 18, Rev 3).

On May 8, 2014 in open court, Magistrate Gilbert questioned Clauss' counsel on this very point after reading Clauss' roundabout answer to Interrogatory No. 18 into the record:

> THE COURT: And so Clauss says "After a diligent search of all of its files, Clauss Construction has been unable to identify any document that segregates the quantities of contaminated soil shipped off site from contaminated rubble and debris shipped off site. And Clauss highly doubts that such a document exists, **which means therefore that Clauss shouldn't have exercised its right to respond to this interrogatory under Rule(d)(1) because no such document exists**.
> \* \* \*
> THE COURT: **So I take that to mean in a roundabout lawyer way that Clauss cannot specify the total amount of contaminated soil Clauss removed** and disposed of as low level waste from Building 330, okay? I know you [Argonne] would rather have had an answer that says "We don't know," **but I don't see there is any way for me to interpret this answer with all of this "lawyerese" in here as anything other than a response that says "We don't know."** Is that a correct interpretation of Clauss's response?
>
> MR. PERSON: **Yes, your Honor.**

(Exhibit 10, May 8, 2014 Court Transcript, pg.14-15 )(emphasis added).

Clauss has judicially admitted that it does not know, and has no evidence to show, how much contaminated soil was actually removed by Clauss during the project. "Judicial admissions are formal concessions in the pleadings, or stipulations by the party or its counsel, that are binding upon the party making them." *Keller v. United States*, 58 F.3d 1194, 1198 n. 8 (7th Cir. 1995).

4

49397-1

## VI. ARGUMENT

Consistent with established case law, Argonne seeks a protective order to preclude the 30(b)(6) deposition based on the topics outlined in Clauss' "draft" 30(b)(6) notice. As a general matter, these topics are far too vague and broad to meet the "painstaking specificity" standard as established in the Seventh Circuit. In addition, many topics seek information that is simply beyond the outer bounds of the Rule 26 limits for discovery in general.

### A. The Requirements of a Rule 30(b)(6) Notice

Rule 30(b)(6) authorizes litigants to name a business entity as a deponent. Fed.R.Civ.P. 30(b)(6). Doing so places a duty upon the business entity to designate an individual to testify on behalf of the corporation who has knowledge responsive to subjects requested in the Rule 30(b)(6) requests of its opponents. See *Smithkline Beecham Corp. v. Apotex Corp.*, No 98 C. 3952, 2000 WL 116082, * 8 (N.D. Ill. Jan. 24, 2000)(citing *Resolution Trust Corp. v. Southern Union Co., Inc.,* 985 F.2d 196, 197 (5th Cir. 1993)).

While the liberal discovery allowances of the Federal Rules do not permit a recipient of discovery requests to fulfill its discovery obligations by failing to conduct a search for answers and then stating it does not know the answer, See *In re Independent Svc. Org. Antitrust Litig.*, 168 F.R.D. 651, 653–54 (D. Kan. 1996), the Rules also preclude proponents of discovery from wielding the discovery process as a club by propounding requests compelling the recipient to assume an excessive burden. *Smithkline Beecham Corp. v. Apotex Corp.* Case No. 98 C 3952, 2000 WL 116082, *9 (N.D. Ill. Jan. 24, 2000). Consequently, the recipient of a Rule 30(b)(6) request is not required to have its counsel muster all of its factual evidence to prepare a witness to be able to testify regarding a defense or claim. See *In re Independent Svc. Org. Antitrust Litig.*, 168 F.R.D. at 654.

Rule 30(b)(6) also requires that a deposition notice "must describe with reasonable particularity." As a recognition that Rule 30(b)(6) can be used a "club," the Seventh Circuit has further noted "[T]he requesting party must take care to designate, with *painstaking specificity,* the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute." *Kalis v. Colgate-Palmolive Co.* 231 F.3d 1049, 1058, n.5 (7th Cir. 2000)(quoting *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 638 (D. Minn. 2000))(emphasis added). "An overbroad Rule 30(b)(6) notice subjects the noticed party to an impossible task. To avoid liability, the noticed party must designate persons knowledgeable in the areas of inquiry listed in the notice. Where, as here, the defendant cannot identify the outer limits of the areas of inquiry noticed, compliant designation is not feasible." *Reed v. Bennett*, 193 F.R.D. 689 (D. Kan. 2000).

The outer bounds of Rule 30(b)(6) is also limited by Rule 26 which permits "discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party...." Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *E.E.O.C. v. Source One Staffing, Inc.,* 11 C 6754, 2013 WL 25033, *3 (N.D. Ill. Jan. 2, 2013)(Mag. Gilbert).

**B.    A Protective Order Must Be Sought for Objectionable Topics**

Under the Rules, a recipient cannot simply object to a Rule 30(b)(6) notice or object and refuse to answer questions at the deposition. The recipient must take an affirmative step to seek a protective order. See *New England Carpenters Health Benefits Fund v. First DataBank, Inc.,* 242 F.R.D. 164, 165-66 (D. Mass. 2007)("If McKesson was of the view that the plaintiff's 30(b)(6) deposition notice was defective or improper in some way … it was McKesson's burden to seek protection pursuant to Rule 26(c)")[1].

---

[1] Rule 37(d)(2) also states that a pending motion for a protective order excuses a parties attendance at a deposition.

The district court has discretion to decide when a protective order is appropriate and what degree of protection is required. *Seattle Times Co., v. Rhinehart*, 467 U.S. 20, 36, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984). Rule 26(c)[2] states only good cause is required in determining whether or not to issue a protective order. *Id.* at 37. In deciding whether good cause exists, the district court must balance the interests of the parties taken into account, the harm to the party seeking the protective order, and the importance of the disclosure to the non-moving party. *Wiggins v. Burge,* 173 F.R.D 226, 229 (N.D. Ill. 1997). If a proposed Rule 30(b)(6) topic is irrelevant, it may constitute an undue burden sufficient for a protective order. *Cooper v. Old Dominion Freight Line, Inc.*, No. 09–CV–2441 JAR, 2011 WL 124567, at *3–4 (D. Kan. Jan. 14, 2011).

### C. Clauss' Topics Are Either Vague/Overbroad or Outside Rule 26

Because Clauss provided 25 topics in its Notice (Exhibit 1), each one of Clauss' topics will be quoted in full and separately analyzed and addressed. Clauss should be required to redo its Rule 30(b)(6) notice consistent with the Seventh Circuit's suggestion of "painstaking specificity" for relevant topics

**Topic 1:** **Preexisting radiological contamination underlying the Project site.**

**OBJECTION:** This topic is overbroad and vague, burdensome and beyond the bounds of Rule 26. The former Building 330 that was the subject of the decontamination and demolition of this Project began operations in 1954. Requiring Argonne to provide testimony regarding all "preexisting" radiological contamination would encompass testimony over 64 years and would be grossly overbroad and burdensome. Also, what does Clauss mean by "pre-existing radiological contamination?" Does Clauss mean contamination in the building? In the soil? In

---

[2] The entire text of Rule 26 ( c) is enclosed as Exhibit 11)

7

49397-1

the groundwater? The topic is vague. The amount of pre-existing contamination is also beyond the bounds of Rule 26. The Contract required Clauss to remove all building material, and up to 2,000 cubic feet of contaminated soil—if found. Thus the amount of contamination in the building itself is not relevant as Clauss had to remove the building in its entirety, regardless of the amount of contamination. Clauss was also provided a report from 2000 on the amount of building contamination (Exhibit 12). Finally, Clauss admitted it never kept track of removal of soil contamination. Thus, the amount of pre-existing contaminated soil, if any, has no bearing in this lawsuit, because Clauss has no idea how much it removed, so there can be no damages proximately cause by any possible contaminated soil and the topic is beyond Rule 26.

> **Topic 2:** The radiological release conditions of the CP-5 reactor concrete dome following the earlier project for the decontamination and decommissioning of the reactor.

**OBJECTION:** This topic is vague and beyond the bounds of Rule 26. The topic must be stated with "painstaking specificity." Clauss' failure to define "release conditions" render the topic vague. This topic is also beyond the bounds of Rule 26. The Contract itself required Clauss to remove *the entire building*, so the radiological release conditions of the dome, which is part of the building itself, are irrelevant, as whether the dome was highly contaminated or not contaminated at all, the Contract still required its complete removal.

> **Topic 3:** The Department of Energy's (DOE) issuance of an August 2009 Finding of No Significant Impact (FONSI) in connection with planning for the Project.

**OBJECTION:** This topic is vague and beyond the bounds of Rule 26. What does Clauss mean "issuance?" Clauss was provided with the FONSI prior to bidding. If Clauss wants to inquire into the Department of Energy's issuance of a FONSI, Clauss should depose the DOE.

8

49397-1

**Topic 4:** **Qualification for funding of the Project under the American Reinvestment and Recovery Act (ARRA) program.**

**OBJECTION:** This topic is beyond the bounds of Rule 26. Funding for this Project under ARRA has no bearing on any material facts concerning any extra costs claimed by Clauss and will not lead to the discovery of material fact. Where the funds come from is irrelevant with respect to Clauss' claim for damages. If Clauss can properly prove it suffered damages, it is entitled to recover, regardless of the source of funds for the Project. In addition, Clauss' "theory" that the ARRA funding was contingent on not exceeding 2,000 cubic feet of contaminated soil is faulty, has no basis in any evidence, and is beyond the bounds of Rule 26 because Clauss has no objective evidence that there was more than 2,000 cubic feet of contaminated soil removed or even present at the site.

**Topic 5:** **The assumptions, conditions, and bases for limiting contaminated soil removal to 2,000 cubic feet.**

**OBJECTION:** This topic is vague, beyond Rule 26, and is factually incorrect and argumentative. The topic needs to be stated with "painstaking specificity." There was never any "bases for limiting contaminated soil removal to 2,000 cubic feet." The Contract required *Clauss to be responsible* for up to the first 2,000 cubic feet of removal of contaminated soil, with Argonne to be responsible for the costs for contaminated soil removal, if required, above that amount. Clauss expressly recognized this requirement in the April 11, 2011 letter to Argonne (Exhibit 7). Because Clauss never removed more than 2,000 cubic feet and admitted in open court that it never kept track of the amount of contaminated soil removed, any information concerning the 2,000 cubic foot issue is irrelevant and beyond the bounds of Rule 26. The only limit was for Clauss' protection in that it had to seek a change order before exceeding the amount.

9

49397-1

**Topic 6:** All pre-bid assumptions concerning performance of work on the Project.

**OBJECTIONS:** This topic is vague. The topic needs to be stated with "painstaking specificity." The topic does not provide a clue as to the party or individual whose "assumptions" are being referenced.

**Topic 7:** Preparation of the final status survey plan (FSSP).

**OBJECTION:** This topic is vague. The topic needs to be stated with "painstaking specificity." What does Clauss want to know about the "preparation?" Under the Contract requirements, it was Clauss and its subcontractor that were required to "prepare" the FSSP according to MARSSIM, not Argonne. Moreover, the FSSP was an activity that lasted several months and included hundreds of emails between Clauss, Argonne and various third parties.

**Topic 8.** Approval of the FSSP.

**OBEJCTION:** This topic is vague. If this sentence fragment can be considered a topic, it needs to be stated with "painstaking specificity." Clauss already knows the FSSP was "approved" on April 4, 2011. If Clauss wants to inquire about specifics of the approval of the FSSP it should be stated specifically.

**Topic 9.** Interaction with the DOE regarding: (a) approval of the contractor selected to perform the Project; (b) consent /approval of the FSSP; (c) approval of Project change orders; and (d) consent / approval of contractor claims.

**OBJECTION:** These topics are beyond the bounds of Rule 26. Under (a), the approval of the contractor for the Project has no bearing on Clauss' claims or the Counterclaim, as Clauss was chosen. Under (b), as noted above, the FSSP was approved on April 4, 2011. Under (c), there are no Project change orders that are at issue in Clauss' claim. Under (d), what does Clauss mean contractor claims? Clauss is the contractor. What does Clauss mean by "claim?" Does

10

49397-1

Clauss mean its own claim? If so, Clauss made repeated claims for funds - which one is Clauss referencing? Finally, the Contract is between Clauss and Argonne, thus any "interaction with "DOE" or "consent/approval of contractor claims" has no bearing on Clauss' claim for breach of contract.

**Topic 10:** The setting of derived concentration guideline limits (DCGLs).

**OBJECTION:** In addition to being hopelessly vague, the topic includes months of communication and hundreds of emails. The topic needs to be stated with "painstaking specificity." What does Clauss want to know? Clauss was tasked with deriving the DCGLs, not Argonne. However, Clauss was incapable of performing this task. Ultimately, Argonne set the DCGLS according to RESRAD. Clauss has already taken the deposition of Argonne employee Charley Yu who was the individual that derived the DCGLs in this case.

**Topic 11:** The decision to reject the radiological characterizations from studies conducted in 1989, 1997, 1998, and 2000 in the setting of DCGLs for the Project.

**OBJECTION:** This topic is vague and overbroad and factually incorrect. The topic needs to be stated with "painstaking specificity." The statement is also incorrect as there was no "decision" to "reject" those studies or "reject" the characterizations. What was rejected was Clauss' and DeNuke's results of DCGLs at the beginning of the project that resulted in a DCGL that was a radiological impossibility. In other words, Clauss' and DeNuke's "process" was rejected in that the results it obtained were at a release level that was higher than the isotope.

**Topic 12:** Submission of the soil remediation plan.

**OBJECTION:** Similar to numerous other topics, this topic includes numerous draft documents and hundreds of emails over several months. This topic is extremely vague and needs

11

49397-1

to be stated with "painstaking specificity." Clauss was the entity that "submitted" so-called soil remediation plans. What does Clauss want to know?

**Topic 13.**     **Approval of the soil remediation plan.**

**OBJECTION:**     This topic is vague. The topic needs to be stated with "painstaking specificity." The first "remediation" plan was approved on March 29, 2011.

**Topic 14.**     **Administration of the soil remediation effort.**

**OBJECTION:**     This topic is vague. The topic needs to be stated with "painstaking specificity." The term "administration" and "soil remediation effort" is vague. What does Clauss want to know? Clauss never kept track of the amount of soil it removed and has no evidence of any contaminated soil that was removed. Thus there was no "soil remediation." Clauss' remediation was to remove contaminated building rubble and debris it knew it left in the ground. See November 3, 2010 email:

On November 3, 2010, Clauss project manager Jason Spaide informed Clauss Vice-President Phil O'Dwyer in an internal email that Clauss was purposely leaving contaminated building rubble and debris in the ground in breach of the Contract and covering up these actions by deceitfully calling the buried building rubble—"rocks."

> Next issue: Rocks in dirt pile. While sorting through the muck pile there will be rocks (read concrete) that will remain. I will do due diligence to ensure that all sizable rocks are removed. I am going to take the following stance which I believe is defensible. If a rock is smaller than 8 inches at its widest point it will remain in the dirt and be utilized as backfill (Per project spec). If a rock is clearly concrete then it will be removed. **Most of the concrete has been handled to the extent that it appears to be a rock now**. (emphasis added)

(Exhibit 13, November 3, 2010 email).

**Topic 15:**     **Schedules for the Project.**
**Topic 16:**     **Schedule updates for the Project.**

**OBJECTION:**     These two topics are vague. The topics need to be stated with "painstaking specificity." Argonne did not prepare "schedules" or "schedule updates" for the Project."

12

49397-1

**Topic 17:** Analysis of delays on the Project.

**OBJECTION:** This topic is vague and beyond the bounds of Rule 26. The topic needs to be stated with "painstaking specificity." Clauss also has not made any claims for delay to the critical path as cause by Argonne in its Complaint, so this information is beyond the bounds of Rule 26. Even if Clauss had made critical path delay claims, such "Analysis" would be the subject of an expert report.

**Topic 18.** Decisions to stop work on the Project or to interfere with Clauss Construction's planned activities for performance of work.

**OBJECTION:** This topic is factually incorrect. There were no decisions to "stop work on the Project" that are at issue. The only stop work order on demolition was due to Clauss' improper implementation of demolition of the dome in May 2010. Clauss has *expressly* indicated it is not seeking any damages related to that incident. Thus, the stop work order is irrelevant for Clauss' claim and beyond the bounds of Rule 26. In addition, this topic is vague in the sense that "interference with Clauss" has no meaning. Moreover, the topic is argumentative in that Argonne did not "interfere" with Clauss. The topic needs to be stated with "painstaking specificity."

**Topic 19:** Interactions with the Oak Ridge Institute for Science and Education (ORISE) concerning the Project.

**OBJECTION:** This topic is vague. The topic needs to be stated with "painstaking specificity." There is no context to the word "interactions."

**Topic 20:** Review, critique, and / or edits of Clauss Construction's final report for the Project.

**OBJECTION:** This topic is beyond the bounds of Rule 26. Any "review" or "critique" of Clauss' final report has no bearing on any issues in the lawsuit and Clauss is not seeking any

damages related to the issuance of Clauss' final report. Clauss also received the "review, critique, and/or edits" during the project and in discovery.

**Topic 21:** **Review and analysis of Clauss Construction's July 12, 2012 Request for Equitable Adjustment (REA).**

**OBJECTION:** This topic is beyond the bounds of Rule 26. Clauss already has the written responses from Argonne to Clauss' July 12, 2012 Request, so it already has the factual information. Seeking Argonne's "review and analysis" of Clauss' July 12, 2012 submission also implicates the attorney work product and attorney client communications which are protected from disclosure. *Am. Nat'l Red Cross v. Travelers Indemnity Co. of R. I.,* 896 F. Supp. 8, 14 (D.D.C.1995) (concluding that facts supporting affirmative defenses were protected by the work product doctrine). In *Am. Nat'l Red Cross*, the court concluded that discovery by this means was protected by the work product doctrine, reasoning that a party's *decision-making* to present and to defend its claim was litigation strategy. 896 F. Supp. at 14. Clauss seeks information about the decision making process.

**Topic 22:** **Preparation of all responses to Clauss Construction's REA and follow-on submissions.**

**OBJECTION:** This topic is vague to the extent Clauss references "follow-on submissions." What is a "follow-on" submission? The topic is also beyond the bounds of Rule 26. Clauss already has Argonne's responses to Clauss July 12, 2012 Request, so Clauss has all the facts. Seeking Argonne's *"preparation* of all responses" of Clauss' July 12, 2012 submission" implicates the attorney work product and attorney client communications which is protected from disclosure. *Am. Nat'l Red Cross v. Travelers Indemnity Co. of R. I.,* 896. F. Supp. 8, 14 (D.D.C.1995) (concluding that facts supporting affirmative defenses were protected by the work product doctrine). In *Am. Nat'l Red Cross*, the court concluded that discovery by this means

14

49397-1

was protected by the work product doctrine, reasoning that a party's decision-making to present and to defend its claim was litigation strategy. 896 F. Supp. at 14.

> **Topic 23:** **All bases underpinning your affirmative defenses, including: (a) failure to give proper notice of differing site condition; (b) failure to give proper notice of alleged equitable adjustment claim; (c) the action is barred by the contractual limitations period; (d) disclaimer of site conditions; (d) concurrent delay; and (e) mend the hold.**
>
> **Topic 24:** **All bases underpinning your counterclaim, including: (a) Count I, Breach of Contract – Section 66; (b) Count II, Breach of Warranty Claim; (c) Count III, Breach of Contract – Section 37; and (d) Count IV, Claim for Audit of Records.**

**OBJECTION**: This topic seeks information that is attorney-work-product and/or attorney-client communication. Clauss seeks the *"bases* underpinning the affirmative defenses and Counterclaim." Such a request invades the work product doctrine. *Am. Nat'l Red Cross v. Travelers Indemnity Co. of R. I.,* 896 F. Supp. 8, 14 (D.D.C.1995) (concluding that facts supporting affirmative defenses were protected by the work product doctrine).

*See also TV Interactive Data Corp., v Sony Corp.,* Case No. 10-475 (MEJ), 2012 WL 1413368 (N.D. Ca. April 23, 2012)(notice is vague because it seeks all facts for each of the affirmative defenses and counterclaims); *Kinetic Concepts, Inc. v. Convatec Inc.,* 268 F.R.D. 255, 263 (M.D.N.C.2010)(same); *S.E.C. v. Morelli,* 143 F.R.D. 42, 47(S.D.N.Y.1992)(barring 30(b)(6) deposition on grounds that it would invade work product protection and reveal "attorney's legal strategy, his intended lines of proof, his evaluation of the strengths and weaknesses of his case"—material that is "accorded almost absolute protection from discovery")

> **Topic 25:** **All facts concerning Clauss Construction's performance on the Project.**

**OBJECTION**: This topic is extremely vague and overbroad. The topic needs to be stated with "painstaking specificity."

15

49397-1

**WHEREFORE,** Argonne respectfully requests that this Court enter a protective Order prohibiting a Rule 30(b)(6) deposition on Clauss' topics, subject to revision.

Respectfully submitted:

UCHICAGO ARGONNE, LLC

s/Craig G. Penrose

Craig G. Penrose
LAURIE & BRENNAN, LLP
2 North Riverside Plaza, Suite 1750
Chicago, Illinois 60606, (312) 234-0305
cpenrose@lauriebrennan.com Attorney for Defendant

16

49397-1

## CERTIFICATE OF SERVICE

I, Craig Penrose, an attorney, hereby certify that on October 27, 2014, I caused a true and correct copy of the foregoing **ARGONNE'S MOTION FOR PROTECTIVE ORDER CONCERNING CLAUSS' 30(b)(6) NOTICE** with the Clerk of the Court using the CM/ECF system which will send e-mail notification of such filing to the below listed counsel

John C. Person
Person & Craver LLP
1025 Connecticut Ave., Nw
Suite 600
Washington, DC 20036
(202) 466-4434
Email: jcperson@personandcraver.com

Robert D. Nachman
Barack Ferrazano Kirschbaum & Nagelberg LLP
200 W. Madison Street
Suite 3900
Chicago, IL 60606
(312) 984-3100
Email: robert.nachman@bfkn.com

s/Craig G. Penrose
Craig G. Penrose

49397-1